The STATE OF OHIO, Appellee,

v.

$765 IN UNITED STATES CURRENCY et al., Appellant.

[Cite as *State v. $765 in United States Currency*, 181 Ohio App.3d 162, 2009-Ohio-711.]

Court of Appeals of Ohio,
Fifth District, Stark County.

No. 2008CA00116.

Decided Feb. 17, 2009.

---

John D. Ferrero, Stark County Prosecuting Attorney, and Gerard T. Yost, Assistant Prosecuting Attorney, for appellee.

Myron P. Watson, for appellant.

FARMER, Presiding Judge.

{¶ 1} On May 11, 2007, appellee, the state of Ohio, filed a civil complaint for forfeiture of certain items seized from appellant, Christopher Davis. A hearing before a magistrate was held on April 24, 2008. By a decision filed April 25, 2008, the magistrate granted the request for forfeiture. A judgment entry and order of distribution affirming the magistrate's decision was filed on April 30, 2008.

{¶ 2} Appellant filed an appeal, and this matter is now before this court for consideration. The assignment of error is as follows:

{¶ 3} "The trial court erred in granting a forfeiture of the money and property of the claimant, Christopher Davis, when the state of Ohio was unable to prove a nexus between property seized and any illegal activity."

{¶ 4} Appellant claims that the trial court erred in granting the request for forfeiture of the items seized by the Canton Police Department, as the state failed to prove a "nexus" between the items seized and any criminal activity. We agree.

{¶ 5} A judgment supported by some competent, credible evidence will not be reversed by a reviewing court as against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578. A reviewing court must not substitute its judgment for that of the trial court when there exists some competent and credible evidence supporting the judgment rendered by the trial court. *Myers v. Garson* (1993), 66 Ohio St.3d 610, 614 N.E.2d 742.

{¶ 6} The items seized were $765 in cash, a 2001 Dodge Stratus, a 2005 Chrysler 300, a 1998 Chrysler Sebring, a 1970 Oldsmobile Cutlass, and four tires with chrome rims. In her decision filed April 25, 2008, the magistrate, as affirmed by the trial court, specifically found that the items seized were "derived directly or indirectly from, proceeds that were obtained directly or indirectly from the commission of a felony drug abuse offense, and/or [were] used or intended to be used in a manner to commit, or to facilitate the commission of a felony drug abuse offense." This conclusion was based upon the following three findings:

{¶ 7} "5. At all relevant times, Christopher Davis had an interest in the subject Property.

{¶ 8} "6. At all relevant times, Christopher Davis had no legitimate source of income with which to purchase or obtain the subject property.

{¶ 9} "7. Forfeiture of the property is neither excessive nor disproportionate to the conduct giving rise to the forfeiture."

{¶ 10} Although conceding the fact that a felony drug-abuse offense was not charged and that there was no evidence of a felony drug-abuse offense, the state argues that there was "clear and convincing evidence that the property to be forfeited is instrumentality or proceeds of conduct that would constitute a felony drug offense." R.C. 2925.43.

{¶ 11} R.C. 2981.02 governs property subject to forfeiture. Subsections (A)(2) and (3) and (B)(1), (2), and (3) state the following:

{¶ 12} "(A) The following property is subject to forfeiture to the state or a political subdivision under either the criminal or delinquency process in section 2981.04 of the Revised Code or the civil process in section 2981.05 of the Revised Code:

{¶ 13} "(2) Proceeds derived from or acquired through the commission of an offense;

{¶ 14} "(3) An instrumentality that is used in or intended to be used in the commission or facilitation of any of the following offenses when the use or intended use, consistent with division (B) of this section, is sufficient to warrant forfeiture under this chapter:

{¶ 15} "(a) A felony;

{¶ 16} "(b) A misdemeanor, when forfeiture is specifically authorized by a section of the Revised Code or by a municipal ordinance that creates the offense or sets forth its penalties;

{¶ 17} "(c) An attempt to commit, complicity in committing, or a conspiracy to commit an offense of the type described in divisions (A)(3)(a) and (b) of this section.

{¶ 18} "(B) In determining whether an alleged instrumentality was used in or was intended to be used in the commission or facilitation of an offense or an attempt, complicity, or conspiracy to commit an offense in a manner sufficient to warrant its forfeiture, the trier of fact shall consider the following factors the trier of fact determines are relevant:

{¶ 19} "(1) Whether the offense could not have been committed or attempted but for the presence of the instrumentality;

{¶ 20} "(2) Whether the primary purpose in using the instrumentality was to commit or attempt to commit the offense;

{¶ 21} "(3) The extent to which the instrumentality furthered the commission of, or attempt to commit, the offense."

{¶ 22} R.C. 2981.05 governs civil forfeiture. Subsection (D) states the following:

{¶ 23} "(D) The court shall issue a civil forfeiture order if it determines that the prosecutor has proved by a preponderance of the evidence that the property is subject to forfeiture under section 2981.02 of the Revised Code, and, after a proportionality review under section 2981.09 of the Revised Code when relevant, the trier of fact specifically describes the extent of the property to be forfeited. A civil forfeiture order shall state that all interest in the property in question of the adult or juvenile who committed the act that is the basis of the order is forfeited to the state or political subdivision and shall make due provision for the interest in that property of any other person, when appropriate under this section. The court may issue any additional order to affect the forfeiture, including, but not limited to, one or more orders under section 2981.06 of the Revised Code."

{¶ 24} R.C. 2981.09 governs value of property subject to forfeiture. Subsection (A) states the following:

{¶ 25} "(A) Property may not be forfeited as an instrumentality under this chapter to the extent that the amount or value of the property is disproportionate to the severity of the offense. The owner of the property shall have the burden of going forward with the evidence and the burden to prove by a preponderance of the evidence that the amount or value of the property subject to forfeiture is disproportionate to the severity of the offense."

{¶ 26} The scope of our review in this case is limited to an examination of the evidence presented to see whether the evidence supports the finding that the items seized were the instrumentality or proceeds of conduct that would constitute a felony drug offense. In addition, our review is also subject to a proportionality review pursuant to R.C. 2981.09(A).

{¶ 27} John Dittmore, former supervisor of the gang task force, testified that some six months prior to investigating appellant, he had contact with appellant and felt that some of appellant's activity was "suspicious" or "a little odd." This suspicious or odd activity consisted of appellant's walking "out to meet [them] outside of his residence. Immediately [locking] the doors to his truck." Thereafter, the gang task force received information that appellant was involved in drug activity. During the surveillance, Dittmore observed appellant at the residence of another person who was also involved in drug activity. After appellant returned to his residence, Dittmore observed the removal of a large trash bag from appellant's vehicle. Dittmore testified that he was "unsure" of what was going on, but said, "We heard Mr. Davis was involved with trafficking in marijuana, and marijuana is commonly placed in trash bags." Because appellant was a parolee through the Adult Parole Authority, his parole officer was called in. Appellant was stopped and arrested for a parole violation (not living at parole-approved address). Appellant "had been smoking marijuana in the vehicle at the time." Thereafter, a search of appellant's residence disclosed "a small amount of marijuana" for "personal use" and "two large big black bags with white residue inside the huge bags," which appeared to be "cocaine residue."

{¶ 28} Police seized four motor vehicles, "a set of brand new rims and maybe tires," and over $700 in cash that was found on appellant's person. When questioned about the source of the money and vehicles, appellant claimed that the vehicles had been purchased with gambling proceeds from a casino. The police were unable to substantiate that appellant had won some $90,000 to $100,000 at a casino. In fact, appellant "was unemployed and made statements [that] he had been unemployed for quite some time."

{¶ 29} Throughout Dittmore's testimony, appellant was linked to Michael ("Mickey") Miller. Miller has been the subject of investigations dating back to

2001 and pleaded guilty in a high-profile case in federal court to numerous counts of money laundering. See also *United States v. Monea* (Mar. 17, 2008), N.D.Ohio No. 1:07CR30, 2008 WL 731100, fn. 1.

{¶ 30} We find that the magistrate's decision, as affirmed by the trial court, was a classic case of building an inference upon an inference. Those inferences were not supported by any direct evidence, but only by innuendo. Upon review, we conclude that the decision that the items seized were derived directly or indirectly from the commission of a felony was not supported by the evidence. Having so found, we find no issue relative to R.C. 2981.09(A).

{¶ 31} The sole assignment of error is granted.

{¶ 32} The judgment of the Court of Common Pleas of Stark County, Ohio, is hereby reversed.

Judgment reversed.

GWIN and WISE, JJ., concur.